# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

CHRISTOPHER KENNARD BURTON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-0622

_____

September 5, 2025

BY ORDER OF THE COURT:

The appellant's motion for a written opinion is granted.  The opinion issued on May 9, 2025, is withdrawn, and the following opinion is substituted therefor.


I HEREBY CERTIFY THE FOREGOING IS A TRUE COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL

CLERK

DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

CHRISTOPHER KENNARD BURTON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-0622
_____

September 5, 2025

Appeal from the Circuit Court for Hillsborough County; Robin F. Fuson, Judge.

Blair Allen, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Natalia Reyna-Pimiento, Assistant Attorney General, Tampa, for Appellee.


LABRIT, Judge.

**ORDER ON MOTION FOR WRITTEN OPINION**

Following the issuance of a per curiam affirmance in this case, the appellant, Mr. Christopher Burton, timely filed a pro se motion for a written opinion. We grant the motion and take this opportunity to explain the procedural conundrum that led us here.

Although Mr. Burton had been represented by the Public Defender's Office through the issuance of this court's per curiam opinion,

he attached to his pro se filing a letter from the Public Defender's Office indicating that it would take no further action on his behalf.

Mr. Burton's motion triggered a threshold inquiry regarding whether the motion was procedurally authorized. Under Florida Rule of General Practice and Judicial Administration 2.505(f), counsel's representation continues until either (1) the court grants a motion to withdraw, (2) substitute counsel appears, or (3) the case is fully concluded and the time to appeal has expired. Under Florida Rule of Appellate Procedure 9.440(d)(3), appellate counsel remains counsel of record unless formally permitted by the court to withdraw.

This framework can create a procedural dilemma in cases like this one, where a defendant is effectively left without active representation after an appellate decision issues but before the time to seek review before the Florida Supreme Court or file a postdecision motion has lapsed. Here, the Public Defender's letter unambiguously disclaimed further representation, but no motion to withdraw was filed and the time to seek further appellate review had yet to expire. As a result, Mr. Burton was still represented even though he no longer had the benefit of active representation by counsel.

Under existing precedent, pro se filings submitted by represented appellants must be stricken as unauthorized. *See, e.g.*, *Johnson v. State*, 974 So. 2d 363, 364-65 (Fla. 2008); *Benjamin v. State*, 32 So. 3d 131, 132 (Fla. 2d DCA 2009). But the rationale for those decisions begins to fray when, as here, the appellant is not actually receiving representation but is nonetheless affirmatively precluded from filing on his own behalf. This problem is exacerbated by the short deadlines imposed by the Florida Rules of Appellate Procedure for filing postdecision motions or seeking review in the Florida Supreme Court—deadlines that are not

2

tolled by the filing of a motion to withdraw. In practice, incarcerated appellants often have limited ability to secure substitute counsel or prompt action from appointed counsel within those timeframes.

In light of this conundrum, we directed the Public Defender to either adopt Mr. Burton's motion for a written opinion or to file a motion to withdraw. The Public Defender adopted Mr. Burton's motion, which we have now granted. While that solves the problem for Mr. Burton, this case underscores the need to consider whether an exception or procedural accommodation may be appropriate in such scenarios to avoid unfairly constraining a defendant's access to postdecision review. In the meantime, we remind all attorneys—particularly institutional actors like the Public Defender—to remain mindful of the formal requirements governing withdrawal.

## OPINION

Mr. Burton appeals from the postconviction court's decision not to modify his sentence under section 921.1402, Florida Statutes (2023), following his 1995 convictions for first-degree murder and armed robbery. After serving twenty-eight years in prison, Mr. Burton filed an application for sentence review and presented expert testimony from a psychologist, Dr. Hartig, who opined that Mr. Burton had matured and was rehabilitated. The State did not present a counter-expert but, through cross-examination, highlighted significant gaps in Dr. Hartig's evaluation. Following the hearing, the postconviction court entered a written order rejecting her testimony, concluding that Mr. Burton had not met his burden of demonstrating rehabilitation or fitness to reenter society, and declined to modify his sentence. Mr. Burton then sought our review.

3

Although we initially affirmed per curiam, we now write pursuant to Florida Rule of Appellate Procedure 9.330(a)(2)(D)(ii), which authorizes a written opinion to explain an apparent deviation from prior precedent. Mr. Burton argues that our PCA conflicted with *Murphy v. State*, 368 So. 3d 1025 (Fla. 2d DCA 2023), in which this court reversed a denial of sentence modification where the unrebutted expert testimony established rehabilitation and fitness to reenter society. We acknowledge that *Murphy* focused primarily on the State's failure to present any rebuttal evidence and included only a brief reference to the State's failure to "otherwise seek to contradict the expert's conclusions." *Id.* at 1028. But that language—drawn from *Tindall v. State*, 310 So. 3d 95, 101 (Fla. 4th DCA 2021), which *Murphy* cited—recognizes that expert testimony may be undermined in other ways, including through effective cross-examination or the absence of foundational support. That is what distinguishes this case.

Here, although the State presented no counter-expert, it exposed significant weaknesses in Dr. Hartig's opinion during cross-examination, and the postconviction court identified multiple, well-reasoned bases for discounting her conclusions. Unlike in *Murphy*, where the record reflected a complete failure to challenge the expert's assessment, the record here supports the postconviction court's exercise of discretion. Accordingly, we write to clarify why our decision does not depart from *Murphy*.

Whether to accept expert testimony lies within the sound discretion of the trial court. *See Tindall*, 310 So. 3d at 101 (quoting *Franqui v. State*, 59 So. 3d 82, 92 (Fla. 2011)). A court may reject the unrebutted testimony of a mental health expert if it "finds that the facts do not support the testimony." *Id.* (quoting *Durousseau v. State*, 55 So. 3d 543,

4

560 (Fla. 2010)). A trial court may also reject expert witness testimony "when it . . . concerns technical evidence and 'is so palpably incredible, illogical, and unreasonable as to be unworthy of belief or otherwise open to doubt.' " *Id.* (quoting *Freeman v. State*, 325 So. 3d 120, 121 (Fla. 5th DCA 2020)). Here, the postconviction court articulated four reasonable grounds for rejecting Dr. Hartig's opinion.

First, the postconviction court found that Dr. Hartig's conclusions were based primarily on Mr. Burton's self-reporting and lacked adequate corroboration. Dr. Hartig did not review police reports, trial transcripts, or prior expert evaluations. She was also unaware that Mr. Burton had been convicted in a separate, contemporaneous case involving attempted murder and robbery with a firearm. This failure to account for key case history and reliance on unverified self-narrative rendered her testimony open to doubt. *See Freeman*, 325 So. 3d at 121; *cf. Nelson v. State*, 850 So. 2d 514, 530 (Fla. 2003).

Second, the postconviction court emphasized Mr. Burton's continued receipt of disciplinary referrals and corrective consultations in prison as undermining Dr. Hartig's opinion that he was fully rehabilitated. *Cf. Peters v. State*, 128 So. 3d 832, 846 (Fla. 4th DCA 2013). The referrals and consultations involved disobeying orders and other signs of rule breaking, even in a highly structured, rule-based environment. The postconviction court reasonably concluded that Mr. Burton's inability to comply with rules—despite knowing that his behavior was being closely scrutinized—undercut Dr. Hartig's conclusion that he was fully rehabilitated.

Third, the postconviction court viewed Dr. Hartig's dismissal of the significance of those referrals and consultations as itself a basis to doubt her judgment. The postconviction court reasonably viewed Mr. Burton's

pattern of continued disciplinary problems as indicating ongoing issues with his ability to follow rules.  *Cf. J.M.H. v. State*, 311 So. 3d 903, 916 (Fla. 2d DCA 2020).  Finally, the postconviction court found that Mr. Burton's continued assertion that he acted in self-defense—contrary to the trial evidence and jury verdict—was inconsistent with genuine remorse, and that his apologies appeared "rehearsed and contrived." This credibility determination was within the postconviction court's discretion.  *Cf. Stephens v. State*, 748 So. 2d 1028, 1034 (Fla. 1999).

In sum, the postconviction court was not required to accept expert testimony that it reasonably found lacked credibility and foundation. Because the record reflects a reasoned and fact-supported exercise of discretion, *see Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980), we conclude that the postconviction court did not abuse its discretion in rejecting Dr. Hartig's testimony and declining to modify Mr. Burton's sentence.

Affirmed.

SILBERMAN and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.